When everyone is seated, I want to find out from a housekeeping perspective how we're going to do this. My understanding for the objectors is you've got three attorneys, two arguing for six minutes and one for eight minutes, but you're the appellants. So the question is, who's going to do the rebuttal? I'm Robert Clark, one of the appellants. Okay, so the others are going to take the full six minutes, and you're going to take just part of your time and use that for rebuttal, or what? So my plan is to use eight minutes and reserve five minutes opening, three minutes for rebuttal. And then I believe Mr. Pence is going to do the broadcast, and I think he's taking six minutes. I can't speak for him. I represent the appellees. Okay, again, I know they've got 15 minutes and five minutes, but for your purposes, I just need to know who's going to do the rebuttal because two have, at least on this sheet, two have six minutes, one has eight minutes. You're the one with eight, right? And you're the one that's going to have reserved, what, three minutes or something for? Very well. Okay. We'll see what you can. Okay. Very well. You all are the appellants. Who's going to start on your side? Please. Need to put the time down here to eight minutes for him, okay? Make his eight minutes there, okay? Thank you. Just wait one second until she gets it there. Right. Okay. Please proceed. Thank you, Your Honor. Robert Clore for the appellant, Gordon Morgan. I appreciate the opportunity to be here in this beautiful courtroom today. We are here asking for this court to reverse what we perceive as a flip-flop decision. The court initially determined that this is a coupon settlement subject to the strictures of CAFA and its coupon provision, and then it backtracked and decided that it wasn't a coupon settlement. Is it your view that the court had no right to change its mind? No. Of course it has a right to change its mind, but it was, unfortunately, it was, at least from our perspective, it was correct the first time and incorrect the second time. And I know the parties on the other side take issue with whether there was actually a determination in the first instance that it was a coupon settlement. They talk about it. The court said it was coupon-like. But it's clear in the record the court did rule initially it was a coupon settlement. That's at one excerpt of record 10. And so we do believe this is a coupon settlement. There are 22, more than 22 million class members who have claims against Uber for relating to representations about safety measures taken by Uber and the associated safe rider fee. And for that 22 million member class, the settlement provides a grand total of $83,000 cash based on the fact that fewer than four-tenths of 1% bothered to file claims. Now that, we believe, was by design because the class notice says if you file a claim, you're likely to get $1.07. So, to no one's surprise, 99.6% of the class said no thanks. Everybody else, by default, gets a coupon, gets a credit, an Uber credit for an average of $1.07. More than half the class members, 12.2 million, get a credit with a face value of $0.35. How do you analyze the online DBD factors here? As you know, we've got a three-factor test by which we determine whether we've got a coupon settlement here. What's your analysis of this case and what way you are successful or not successful on each of the prongs? We believe it checks all three of the factors, the boxes for online DBD factors. Number one, the class members do have to spend out-of-pocket with Uber in order to utilize the credits. Is that true? I thought they could elect cash up front, and if they didn't make an election, they got cash in the back end automatically. Isn't that right? Right, but the problem with that is it is true that they have the option to select cash at the outset, but when you tell somebody that you can file a claim and get $1.06, nobody's going to file a claim. So, the result was inevitable. There's going to be a single back-end attempt to pay to distribute cash. Let me just ask you this. I'm just one of a million consumers. Whenever I get a class action settlement documentation in the mail, I just check it. I don't think I'm ever going to get anything out of it, and yet that's the way they work. But in this case, there is some money, some money, and I'm not sure that you're right that this is an automatic coupon settlement unless, under the online DVD case, if it's a de minimis amount of cash, it doesn't matter whether there's cash. It's just basically a coupon settlement automatically. Is that your position? I don't know if that perfectly encapsulates my position. I don't think if it's a de minimis amount of cash, it's a coupon automatically. It is? Pardon? And it is? No, I don't know that that's the case. I think here, when it's clear that when it's a de minimis amount and you're forcing, you're in effect forcing everybody to take credits, which is exactly what happened, and you know that to be the case, then that's got to be, you've got to look at what is the actual value of these credits because otherwise, I mean, that's the idea of CAFAs. Let's don't allow attorneys to inflate fees. So, you are, if I'm understanding you correctly, you are saying that the fact that this is a de minimis amount of cash, kind of ipso facto means this is a coupon settlement. Well, I appreciate your question, but I don't know that I'm saying ipso facto. I'm saying under these circumstances, what we have before us in this case, the de minimis amount of cash and the results of the process in which everybody is getting coupons or is getting credits. To me, they're clearly coupons. In that instance, you have to look behind them and see what are these actually worth. Otherwise— Well, that gets back to the de minimis issue again, doesn't it? I learned in law school, de minimis non curate lex. Was that wrong? De minimis non curate lex. The law doesn't bother with trifles. You have less than three minutes left. Do you want to save that for rebuttal? Thank you, Your Honor. Very well. Okay, who's going to go second? May it please the court. John Pence on behalf of Robert Hudson. My client fully shares Mr. Morgan's position that this is a CAFA settlement and that these are coupons and the judge got it right the first time. However, even if this case is not governed by CAFA, the district court committed numerous legal errors and abuses of its discretion that require reversal and remand. First of all, perhaps most importantly, the district court acknowledged in its August 2020 hearing that compensation in kind is worth less than cash, and it never revisited or recanted that observation. Indeed, that observation is reinforced by numerous cases in the circuit that are cited in my reply brief, and perhaps the most famous case is In Re Mexico money transfer out of the Seventh Circuit. But the court, in its opinion, in its fee order, completely fails to place a valuation on the settlement, as well as failing to identify what percentage fee it actually awarded. It almost jumps immediately from its recitation of facts to a lodestar crosscheck and finds on that, make certain findings on the fee factors, all of which would militate in favor of a fee at the lower range, lower end of the range accepted in the Ninth Circuit. The court found that the settlement is at the bottom of the range of adequacy and fairness. Indeed, it rejected, arguably rejected a settlement that was worth more than the one that we have here today because the first settlement, and I may have misstated this in my brief, it was all cash. It wasn't coupon at all. Coupons with a face value of 30 or credits with a face value of 32 and a half million, even if you discount them at the minimum amount that the courts did in Fernandez and Young, 80 to 85% is worth less than 28 million in cash. The court. Yes, Your Honor.  The bigger the class, the more difficult it is to determine what the appropriate quantum of cash is. If you have a class of 200 million people, even though you may have a $200 million settlement, they're not going to get very much. On the other hand, if you've got a class of 12, they're going to do really well. But that's the problem with these big class actions, isn't it? Well, Your Honor, in this case, it was known, it is known that there are 22 million class members and therefore the settlement of 32 and a half million dollars or credits only averages out to about $1.7 per class member. And yes, Your Honor, when that's the amount that's available, the claims rate is going to be very low. It's rarely greater than 5% even when you have 80 to $100 available to the class members, such as in the recent Apple iPhone case. But the court's findings on the fee factors don't correspond or justify the Lodestar multiplier that the court ultimately approved. And there again, the court never does the math and identifies the fact that it's approving a Lodestar multiplier of 2.9, which is at the high end of the range. And one would expect that that would be reserved for either extremely risky cases or cases where the class counsel has achieved exceptional results. And that's not this case. Counsel, my understanding is that the judge reduced the benchmark by 25% and also mentioned specifically the litigation risk faced by class counsel. Isn't that correct? Well, the court mentions a risk that Uber would enforce its arbitration clause. But that is a risk if the case actually gets decided on the merits or goes to trial. Here, the case went to settlement mediation six months after it was filed. And then, only then, did class counsel proceed to run up, I believe it was 1,074 hours on two separate sets of mediations. The second set was necessitated by class counsel's own errors in proposing the first settlement that was proposing to pay money to people who never paid these fees, safe ride fees. Isn't that why the trial court discounted the benchmark by 25%? The court never took the benchmark down. Well, my understanding is perhaps incorrect, and I thought the court reduced it by 25% for the very reasons you're talking about. Well, the court expressed it in terms of reducing the multiplier from the requested 4.2, I believe, to what ends up being a 2.9. That sounds like 25% to me. Your Honor, your math may be correct, but if the court had properly reduced the load star to account for the extremely high number of hours here, it's 38% of the total were spent on these two sets of negotiations. And in the Rose case, which I cite in my brief, there the negotiation and mediation hours were 800, and there wasn't even a rejected settlement. The court said that's far too high, we're going to cut that in half. So I would argue that the court here should not have started with the outrageous excessive fee that was requested and then inched down from there. It should have started with the load star and then decided what kind of enhancement of that load star was necessary to avoid unjust enrichment of the class. Your time is up. Let me ask my colleagues whether either has questions of counsel who just addressed the court. No. No, thanks. Very well. Okay. Thank you, Your Honor. So we have the third member of the triumvirate. We do. Indeed. Please proceed. Thank you, Your Honor. Members of the panel, my name is Albert Bachrach. I represent the Objector Appellate Jennifer Hinojosa. I agree essentially with everything that Mr. Klor and Mr. Penza told the court today and would point out that the timeframe of this case shows that what we are saying to the court is essentially correct. That is, district court approved the settlement in August of 2019. After repeated attempts by class counsel to get paid, the court finally agreed to an attorney's fee order, but that was 25 months later in September of 2021. And the reason for the delay was that the court well recognized that this is a coupon settlement. Whether by accident or design, it's irrelevant, but none of the cash that was paid by the… So where is that in the record? Did the court say I'm delaying because I really think it's a coupon settlement? Well, if you look at the district court docket, you'll see that there were requests by the district court to class counsel to re-file for attorney's fees. And there was a long period of time between the court's request for a new filing and the class counsel's request for attorney's fees the second time. And that request, the appellate court wanted to match up documents, is basically the original request by class counsel filed a second time. The district court record then reveals a hearing with regard to the issue of attorney's fees, a long period of time, and then the district court's decision that I must be wrong. It's not a coupon settlement. I can pay you under the Class Action Fairness Act. The problem is that it is a class action settlement, and at best under subsection C of the Class Action Fairness Act, the court could have paid something to class counsel, but certainly not based on the value to the class of the cash involved in this matter because you only needed about $610,000 to fund this settlement. What happened was the money left the defendants, went into a settlement fund, and then pursuant to the actual wording of the settlement documents, the money gets paid back to Uber to distribute it as coupons. So in effect, it looks as if Uber is paying $22 million. I'm sorry, wrong, $32.5 million. But in fact, they're not because almost all of the $32.5 million, about $31.8 million, goes back to Uber and gets distributed as coupons, as Mr. Klor and Mr. Puntz both have pointed out to the court. The average value, about 84% of the class members got less than a $2 credit on an Uber ride. Counsel? Go back to Judge Smith's original question. Counsel? Yes. Correct me if I'm wrong. You're saying that Uber got everything back. I thought that to the degree it was not used in connection with rides or eats or whatever, that it was going to go to a, I'll call it a goodwill organization that was going to do something to benefit people who were deprived of something. It's an elegant way to say the way things are in Cypress these days. But isn't that what happened? Well, that's what's built into the settlement. But really, the – But Uber didn't get to keep it, right? The money all went out one way or another. It goes somewhere else. Well, obviously, that would be correct, Your Honor, but it's the wrong question. Okay. What's the right question? The right question is why was the money paid into a settlement fund and paid back to Uber for distribution to its riders? Everybody is in agreement, I believe, that you cannot go anywhere in an Uber for $2. Yet almost everyone in the class got $2 or less from Uber as a part of the settlement. Under the classic definition in every circuit, when you're looking at a coupon settlement, it requires the class member to continue dealing with the person who has committed the illegal act. In this case, this settlement is designed to make each and every Uber class member continue to deal with Uber. And as Mr. Pence said, nobody is going to write in for their $1.10. And so whether or not there's a Cypress of any appreciable size is irrelevant to the coupon analysis. Counsel, if they don't do that, if they don't use Uber, they get cash, right? Even though it's a little bit of money, they get cash. In theory, Your Honor, they could get, as you pointed out, a de minimis amount of cash, but as you also pointed out, de minimis non curat lex. The law doesn't deal with trifles because it just doesn't matter in anybody's life whether or not they get $1 or even $2 in cash. On that happy note, let me ask my colleague whether either has additional questions for counsel. None for me. I have just one question. The online DVD factors way seems to me in favor of this not being a coupon settlement. You had a district judge who had a lot of other business to do other than your case. I can't criticize him for being late unless you have some facts in the record that show that he's traditionally late. That has not been my experience. But why isn't this a factual issue that was determined by the district judge over a long period of time and therefore the responsibility you would have to show it's clearly erroneous? Well, I believe it's an issue of law whether or not they're coupons and that would be a de novo review by this court rather than a clearly erroneous standard and I believe I put that on page 2 of my initial brief. I was not being critical of the district court. It is true that the district court spent a great deal of time on this case, but that wasn't because of the district court's inability to move its socket forward. That was because the district court wanted to allow class counsel to achieve some fee for the work that they had done but realized that under the Class Action Fairness Act, he couldn't actually pay them a significant fee. So the district court... So isn't that just surmise on your part? I mean, there's nothing in the record that says that. Judge Thomas, that would obviously be true in any case. The district court would never write, I would like to pay people, but the law is a constraint. I'll pass the ball back to them and see whether they can come up with a better application for attorney's fees. It was only after class counsel basically ignored the district court's request that they refile. But you're attributing a bunch of motives to the district court that we don't have in front of us. And we know this district judge, and generally if they want more information, they ask for more information. The motive is not really relevant to us. You keep saying he did this because he wanted to help them. He did this because he knew it was a coupon settlement. And I just don't see how that's relevant to your position on appeal. I apologize, Judge Thomas. It's not the... I don't want to quarrel with you, but you seem to be at the center of your argument. I'm sorry if it comes across that way. The... Why the district court did anything in particular in this case is, I believe, as you would say, irrelevant. There's nothing in the record that indicates that the district court was being pleasant or unpleasant or kind or unkind. And I apologize to the extent that it comes across in my argument that way. But just looking at the facts, you still have the district court saying it's a coupon settlement. You can't get these fees. File another application for fees. Getting the same application for fees reworked without a new theory of how the attorney's fees should be paid. And then reaching a conclusion counter to the original conclusion that it's not a coupon settlement, thereby not bound by 28 U.S.C., and therefore granting them the $5 million-plus in attorney's fees. Why the court did what it did is, in fact, irrelevant. I have no argument there. I didn't mean to say that this court should look more carefully at what the district court did because the district court was being nice to class counsel. I was probably inartfully trying to say, this is the timeline of what happened, and based on the timeline, it seems more likely than not, and highly probable, that the district court's decision that it was not a coupon settlement and to pay fees to class counsel outside of CAFA was an incorrect decision based on the law because going back to coupon settlements and again to Judge Smith's original question on looking at coupon settlements, it's $1 for 50% of the class, and it's less than $2 for about 80% of the class. We want you to answer our colleagues' questions. Do they have additional questions? We're letting you have a soliloquy. It's brilliant. I'm sorry. I'm sorry. I'm trying to answer. None for me. Okay. Very well. Thank you. Thank you, counsel, for your soliloquy, and we will now hear from, I guess, Mr. Maia, correct? Yes. Very well. Please proceed. Good morning, Your Honors. May it please the Court. I'm Theodore Maia here on behalf of plaintiffs, appellees, and the common issue across all of these appeals is whether or not this is a coupon settlement within the meaning of CAFA, and the answer is clearly no. This is a $32.5 million cash settlement that's extraordinarily well designed to deliver as much of that money as possible to all 22 million class members. Counsel, let me just ask you this. You've heard the arguments of, you know, obviously this is a truly de minimis cash settlement. What's different about this settlement, if you will, is you've got potential cash up front, you've got potential cash at the end if they don't use the coupon, but it's de minimis anyway you look at it. As we evaluate whether this is a coupon settlement, what role, if any, should the amount of cash play in our judgment? What if it was $0.10? Would that make a difference? No, Your Honor. I think that the determination of whether or not a settlement's payment is a coupon can't depend on the amount of that payment. It can't be that if I give— It cannot. No, it cannot be. If I give you a dime, that is not a coupon. That is a dime. So that's the difference. So if a coupon is offered to use Uber for rides or for eats, and you say, well, it's not a coupon settlement because you can have a dime, that's good enough. Is that correct? Sorry, I'm not following you. In other words, if you can have the coupon or the dime, a dime's good enough? A dime is not a coupon is my point, just because it's $0.10. No, I understand. What you're saying is any amount of cash, $0.01 maybe. Right. That does not make it a coupon. So that's the difference. If class counsel suggests a settlement that involves a coupon and $0.01, that's enough to take it out of the coupon. No, Your Honor. This is not a coupon and cash is my position. This is not a coupon and cash settlement. What is it? This is a cash settlement. No aspect of this settlement is a coupon. So this is not a situation where someone's getting a coupon and cash. I thought that they could use this amount to go on an Uber ride just as a credit. That's true. Isn't that a coupon? Okay. First, they had the option of submitting a payment election form to get cash if they wanted it up front. Of those who responded, a quarter of them asked that the money just be put into their Uber rider account. And that's a coupon, isn't it? I would disagree with that. What would you call it? Your Honor, I would call it a payment to their Uber rider account. Okay. Yes. But that's somatic, isn't it? I mean, realistically, they're getting something they have to use in the business of the, in quotes, offender, in quotes. The question before the court is whether this is a coupon. That could be entirely characterized as semantics. But that's how we define coupon. Right. That's right. And I think the court is guided by the in re online DVD factors in that regard. Appropriately so. The first of those factors is whether class members have to hand over more of their own money before they can take advantage of a credit. That's why I said it's a coupon, maybe, because if they get a credit in their account, and I think everybody agrees you can't get an Uber ride for a dollar, they're going to have to pay more of their own money to take advantage of that, right? That is solely, to the extent that's true, that's solely a function of the fact that we have 22 million class members. Right. And many of them, some of them are actually going to get a significant amount of money because they took enough rides with Uber and paid enough safe rides fees during the class period. They're going to get over 50 bucks, it looks like. Wow. So I know that's a small number. Okay. 50 bucks. It's enough for a ride. It's enough for many items that you can purchase through. Reminds me of the movie Trading Places. The movies. When we're trying to answer this question, we should look at the rest of the DVD factors as well. The second factor is whether a credit is valid for select products or services. And here, you know, the offerings that are made available by Uber and which class members will be able to use their settlement shares for have expanded greatly since 2017 when the settlement was executed. And I would actually, I think it would be appropriate for the court to take judicial notice of the Uber app as it exists today. When you open that app up, the first page. Wait a minute. You're asking us to take judicial notice. We usually do fact-finding if it's important. We'll send it back to the trial judge, which I assume you don't want us to do. No. No. But I do think it's appropriate to, you know, the Uber app will allow class members to use their settlement shares. But you're seriously asking us to take judicial notice of the app. No, I will not make any motion. Let's hear about the app, though. I'm curious. Go ahead. Let's hear about the app, then. Well, well, Your Honor, I have it here. You open it up, and you have options to get a ride, to get food, to get groceries. You can get. . . I used it this morning, and they brought me groceries when I wanted a ride. I hope that's not true. You know. . . So what's your point about the app? My point is that the settlement shares can be used on a wide variety of goods and services these days. So that's an important factor under in-rate online DVD. The last factor is how much flexibility is offered and whether the credit expires or is transferable. In this case, after one year, it's not so much that the credit expires. It's that it's paid out in cash, a direct payment to the class member's last form of payment on file with Uber. The District Court ultimately found our expert evidence not. . . It didn't consider the expert evidence. It didn't exclude it, as some of the objectors have argued. But we did submit evidence showing that those payments are highly likely to succeed. That they're what? Highly likely to succeed. The payments? The direct payments after a year. If a settlement class member does not use their settlement share while it's available in their Uber Rider account, then it's going to be paid directly to their form of payment on file with Uber. But the experts suggested that it was highly likely that that's what was going to happen. They weren't going to use it for the coupon. No, no, I don't. . . Yeah. Right, so I understand what happens if it's not used in a year. It goes back to the credit card on file. That's right. If it's still valid. That's right. It goes back to their minus transaction costs, which in 2017 were estimated to be about $0.07 per. So instead of a dollar, they get $0.93? $0.97. If a person's settlement share was a dollar. Now, there are people whose settlement shares are going to be a lot more than that. If they had $50 and they had $0.07 off, then they would get $49.93? Something like that. $49.97? Well. . . It's just minus $0.07. This is serious stuff. So let's go back to the customer agreement from Bennett in terms of risk. I understand it had an arbitration clause and a waiver of class action. Is that right? That's correct, Your Honor. Okay, thank you. That's correct, Your Honor. And I think that was a real risk. We pointed out in our papers that the First Circuit ultimately held that that arbitration agreement was not enforceable. But to my knowledge, there's no decision by this Court going that way. And I have no reason to expect that that would be the case. We made many of the same arguments that plaintiffs in that Colonnane case did make. Let me shift you to the amount of fees that were awarded by the district judge. You heard the discussion with opposing counsel about what I understood to be a 25% discount and an additional factor related to the risk that was involved. Do you have any disagreement about the amount of fees that was awarded by the district judge?  Yeah. In other words, what? No. We asked at the time for 25%. Eight point, I think it was one, two, five million. The Court slashed that to 5.69 million. We're not contesting that on a deal at all. Okay, so you're good with those. No. Our position is that the district court's orders and judgment should be affirmed in all respects. I do think that I need to correct the record on some points that objectors' counsels made. First is Mr. Klor and a number of the other objectors' counsels have stated that the district court, at some point or another, definitively found that this was a coupon settlement. And that is not the case. The Court said at one point that it was sufficiently coupon-like that Judge Tygar was going to apply CAFA, a decision he later changed. He said that was based on the amount of the payments. He later revisited that reasoning and said, you know, I think the amount is not determinative and that looking at it in toto, this is not a coupon settlement. Let me ask you this. Opposing counsel obviously disagrees with this, but let's just say hypothetically that Judge Tygar thought to himself, you know, these lawyers have done a lot of work here. I really can't fairly compensate them if I apply CAFA coupon status to this. So I'm going to change my mind and I'm going to say that this is a non-coupon settlement. Would there be anything improper or illegal about that? Yeah, I don't think the Court has discretion over whether or not CAFA applies. But, I mean, if it just changed its mind because, this is all hypo, if because he thought, gee, I can't compensate these lawyers enough if I do it that way. Would that be illegal? I can't speak to the District Court's motives or anything. I'm not talking about the Court's motives. I'm asking whether it would be illegal. If the Court concluded it needed to compensate the counsel more. The Court was entirely entitled to change its mind on this issue. And, in fact, that's what we urged the Court to do because we believed that its original determination that this settlement was coupon-like was entirely incorrect. I believe that the Court reversed course because it understood that this is not a coupon settlement. There's an option for a cash payment up front. Then it goes into an Uber account where it is not a coupon. It is money in that person's account that can be applied to whatever Uber offers. From your perspective, even if it's one cent, that takes it out of the coupon category. I don't think it's the amount that determines whether or not it's a coupon. It's the manner in which it is made available. As long as they get that cent in their credit card. Yeah, I think a one-cent credit to a credit card is money. That's money. That's good to know. I think a one-cent discount on chocolates or flowers, as was the case in EasySaver, is a coupon. Or, for that matter, a $10 or $20 discount as in EasySaver. That was a $20 discount on chocolates or flowers, very few of which cost less than that. Cash is cash. It doesn't matter how much. Right. If it's cash, there's a difference between cash and a coupon. It's not that something doesn't just become a coupon because it's a small amount of cash. I think I also need to correct the record where Mr. Bacharach said that the money will be paid back to Uber to be distributed as coupons. This is not how the settlement works. Rather, 14 days after the effective date, Uber will deposit the entire settlement fund balance, which is almost $32.5 million. They've already paid out some, to a qualified settlement fund where it will be. If class members use their settlement shares while they are in the Uber Rider accounts, then Uber is paid back in an amount commensurate with those class members' use of their settlement shares in that manner. Otherwise, Uber would be paying these monies twice, so they get that money back. Then at the end, when Uber will make a direct payment to class members' payment forms on file, to the extent those payments are successful, again, Uber will get money back so that it's only paying out these monies once rather than twice. Isn't there an ultimate beneficiary? There is. The National Consumer Law Center. What's the name of that entity? I forget. National Consumer Law Center. That's it. Okay. We've got about 36 seconds left. Mr. Pence argued that the first settlement was all cash and somehow totally different from the 2017 settlement that the court ultimately approved. That is false. The two settlements were identical in terms of their use of the Uber Rider accounts to distribute settlement funds in part, and the only difference was the amount of the settlement and the class definition and who was included. Let me ask my colleague whether either has additional questions for Mr. Maia. Very well. Thank you, Mr. Maia. Thank you. I appreciate it. So this is Mr. Harber on behalf of Uber, I believe, correct? Thank you, Your Honor. I'm Michael Harber. I represent Defendant Appellee's Uber Technologies, Inc. and Razor. I think I can be fairly quick. The main issue in these appeals is whether or not the district court's fee award was proper. Uber doesn't take any position on that issue. However, one of the objectors, Gordon Morgan, also purports to appeal the district court's approval of the settlement as fair and reasonable. As we explained in our brief, I think we think that's wrong for numerous reasons. In fact, we don't think that either below or on appeal, any of the objectors, including Mr. Morgan, have really challenged any of the district court's fairness analysis. Your position is that Morgan waived that issue. Is that correct? Yes. We believe that it was waived because it wasn't timely raised below. However, even if the court does choose to consider it, we think it completely lacks merit. Okay. I just want to clarify something based on Mr. Morgan's reply. Mr. Morgan asserts that there is no evidence before the district court or before this court in the record regarding either the redemption rate, i.e., how many people would use the funds paid to their Uber accounts, or what the likely success rate of the back-end payment would be. And this claim is simply not true. There was evidence that the parties provided to the district court throughout the settlement approval process regarding Uber's usage and attrition rates. So the usage rate was how many class members had used Uber in the past year, and the attrition rate was how many users had closed their accounts. And what this evidence showed is that you could expect a substantial number of class members or simply repeat Uber users. So they use Uber relatively regularly, at least multiple times a year. And with those class members, they would get reimbursed or paid their settlement share. Counsel, let me ask you this. I guess he's not your co-counsel, but Mr. Maya has indicated to us that it doesn't matter the quantum of cash involved. As long as there's cash involved in the settlement, it's not a coupon settlement. What's Uber's position on that, if any? So we would agree with class counsel on that, I think, for the following reason. You have to consider what the payment is relative to the claim. So, for example, just to take the example of $0.10, if the class is claiming that they were cheated out of $0.10, and they get compensated $0.10 through a variety of mechanisms, then I think that would not be a coupon settlement. Now, of course, in this case, the injury to individual class member varies. But in many cases, it's a very, very small dollar amount. We're talking about a fee that was for most of its life a single dollar. And so you're going to have a lot of class members, as you do in a lot of these class actions, who have monetary claims, but those monetary claims are very small. And so what the purpose of this settlement was to figure out, okay, how can we compensate class members in a way that will ensure that the greatest possible, or at least within reason, the greatest amount of the settlement shares will actually go to class members. So does that mean, then, that the issue is if the total amount of, if you will, damages available is really de minimis, then you can have a really de minimis amount of cash to get it out of the coupon area. But does that also mean, if the amount is really big, that a de minimis amount of cash is insufficient? I think if you had a situation where, for example, let's say the settlement shares that people were entitled to were some larger amount, like $300, and you only offered them a cash option of far less than that. Like $0.10. Like $0.10. Then I would think, and for the rest, they just got a credit. I think that would be a coupon settlement. In fact, that's the court's decision. So you differ with Mr. Maya on that, I gather. I'm not sure that we're actually disagreeing. We may agree on that point. I'm not sure I fully appreciated what Mr. Maya was saying. But I think if you look at the lumber liquidators case that cited the briefing, that is that type of case, where you had a situation where the class was offered either a choice between a credit or cash, and the credit was orders of magnitudes more than the cash. And the court said, I believe it was the Fourth Circuit in that case, said, well, you can't escape CAFRA's requirements by simply offering a nominal amount of cash option. So other circuits have felt differently. Your time is up. Let me ask my colleagues whether either have questions. Just one, I think. Just to illuminate your current statement, I gather what you're saying is that the settlement has to correlate with the damage and not be a disguised coupon. Is that what you're saying? That's correct. I think the difference between this case and all the cases cited by objectors on the coupon issue is, in this case, the class have the ability to receive the full value of their settlement shares in cash, either on the front end by filling out a claims form or on the back end if they just do nothing and they don't use their Uber account for a year. In all the other cases – Go ahead. Well, in the question of de minimis would come up in terms of the fairness of the settlement, correct? Correct. The question of whether or not the overall value that class members are receiving would be a question of fairness. And here the district judge thoroughly scrutinized the fairness of the settlement. In fact, he did not approve the first settlement, and there was significant evidence presented about why there was substantial risk to class recovery, and none of the objectors, either below or on appeal, have really ever taken issue with that evidence. Thank you. Very well. Judge Wallace, do you have any questions? No, thank you. Very well. Thank you, Your Honor. All right. So, Mr. Klor, you have three minutes of rebuttal. Thank you. I think the relevant question is, does the de minimis value of the coupon coerce the class member into choosing the credits? They didn't have to say in the class notice that, on average, the class members would receive $1.07. As soon as they did, they ensured that nobody was going to file a claim, and that's exactly what happened. I'm somewhat shocked that counsel is taking the position that there's evidence before this court to consider about redemption rates and the back-end payments. The district court, on page 13 of the excerpts, the first volume, page 13 of the excerpt from the record, expressly, quote, rejected the evidence that they presented to the district court. So this court can't look to that evidence, and the appellees did not challenge that. What about on the redemption rate? Pardon? On the redemption rate and also on the one-time attempted back-end payment. So there's no evidence. We were correct in our reply brief. There's no evidence before this court that any meaningful percentage of class members will receive that back-end payment. And if you think about it, we have 12.2 million class members who are getting coupons worth purported $0.35 value. In order to get that amount, they had to take between one and three rides during the class periods, which is between 2013 and 2016. So it's very unlikely that people who used Uber between one and three times over a period of three years are going to turn around and for a one-year period, at least there's a good chance that a substantial percentage of those folks are not going to use their credits. Now, is that a role that we're supposed to – well, let me put it this way. That's something the trial judge did. What role do we play in that? Are we supposed to override from your perspective, override the district court's factual determination? Well, the court didn't. Is this a de novo analysis? It is a de novo analysis. The court didn't determine redemption rates or cash that's going to reach the class because it said this is – it washed its hands and said this is not a coupon settlement, so I don't have to look at that. But that's part of the fairness analysis, right? Or is it part of whether it's a coupon analysis? I think it does play into whether it's a coupon analysis. And I see I'm – am I over my time? No, no, you'll get there, but you're not there yet. This court has repeatedly treated settlements with coupon – sorry, with cash options as coupon settlements just because it includes a throw-in and cash option does not remove it. You can't draft your way around CAFA by throwing in a cash option, especially when it's designed to produce the result that we have here, which is that nobody is going to take the cash option. Everybody is going to – nobody is going to bother with it. It's not worth their time. Okay. Very well. Any other questions that either of my colleagues has for counsel? Thanks. Very well. Thanks to all counsel. We appreciate it. The case just argued is submitted and the court stands adjourned for the day. All rise. The court for this session stands adjourned.
judges: WALLACE, THOMAS, SMITH